IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CUBICA GROUP, LLLP and OCEAN SIDE VILLAGE, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MAPFRE PUERTO RICAN AMERICAN INSURANCE COMPANY (MAPFRE) and ARACELIS ACEVEDO, <br><br> Defendants. | No. 3:11-CV-108 |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiffs' motion to disqualify [DE 102] defendant MAPFRE Puerto Rican American Insurance Company's ("MAPFRE") counsel, the law firm of Dudley, Topper and Feuerzeig, LLP ("DTF"), pursuant to Rules 1.7 and 3.7 of the ABA Model Rules of Professional Conduct ("MPRC").[1]  The motion to disqualify is predicated on DTF's prior representation of Ocean Side Village, Inc. ("Ocean Side") "in the acquisition of the land, zoning matters and individual unit sales at the affordable housing community" at Raphune Vistas, 1-13 Donoe, St. Thomas, VI ("the Raphune Vistas project").  Pls.' Mot. Disqualify ("Pls.' Mot.") at 1-2.  MAPFRE opposes the motion [DE 107].  For the reasons that follow, this Court DENIES the motion.

### I.  PROCEDURAL & FACTUAL HISTORY

On June 18, 2007, Ocean Side, a developer, and Cubica Group, LLLP ("Cubica"), a building contractor, entered into an AIA Document A101 – Standard Form of Agreement

---

[1]  In the Virgin Islands, the MRPC govern the professional responsibilities of practicing attorneys.  *See* LRCi 83.2(a)(1); *see also VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 719 (D.V.I. 2002).

between Owner and Contractor, wherein Ocean Side retained Cubica to build an affordable housing community at Raphune Vistas. Pls.' Mot. at 1; Pls.' Mot., Ex. A [DE 102-1]. At all times relevant, the project was covered under a Builder's Risk policy, which Cubica had entered into with MAPFRE, and under which Ocean Side was "an intended beneficiary." Pls.' Mot. at 1. On August 30, 2010, Hurricane Earl struck St. Thomas and caused significant windstorm damage to areas of the project site still under construction. Pls.' Mot. at 1-2; Am. Compl. ¶ 13 [DE 84]. Cubica "reported a claim under [the policy] for property damages caused to the areas of the project site that were under construction and not yet turned over to the developer, Ocean Side." Pls.' Mot. at 2. MAPFRE initially agreed that the property damages were covered under the policy, but later denied coverage because "the property did not have adequate limits of insurance at the time of the loss." *Id*. MAPFRE's denial of coverage gave rise to the instant matter filed by Cubica on September 27, 2011 for breach of contract, misrepresentation, negligence and bad faith.

DTF appeared for MAPFRE on December 1, 2011. [DE 7]. On January 27, 2012, plaintiffs' counsel called DTF, requesting DTF withdraw as MAPFRE's counsel. Def.'s Resp., Ex. 1 [DE 107-1]. Plaintiffs' request was based on an alleged conflict of interest resulting from DTF's representation of Cubica with several matters involving the Raphune Vistas project, including zoning matters and closings of various residential units. Def.'s Resp., Ex. 1 [DE 107-1]. In particular, plaintiffs' counsel advised that plaintiffs had informed her that DTF had

> acted as the closing agents for the Raphune Vistas project and was involved in the rezoning of the property where the claim in this lawsuit is set, as well as rezoning other lands owned by companies related to Cubica, and was the closing agent for the closings of the residences in Raphune Vistas.
>
> My client informs me that your firm has been given confidential information about Cubica and its related companies, as well as information on [the Raphune

> Vista project] where the loss was sustained and the claim made. In addition, your firm also represented Oceanside[2] Village, Inc., the co-insured under the MAPFRE policy at the time of the loss. Finally, the land for [the Raphune Vista project] that is the basis of [plaintiffs'] lawsuit [against MAPFRE] was sold to Oceanside Village, Inc. by members of your firm.

*Id.* Plaintiffs' counsel memorialized the conversation in a letter dated January 30, 2012. Def.'s Resp., Ex. 1 [DE 107-1]. On February 2, 2012, DTF responded that no conflict of interest existed and withdrawal was thus unwarranted. Pls.' Mot., Ex. D [DE 102-4]. In defending its position, DTF first noted that it had never represented Cubica[3] *Id.* Then, while conceding the firm had represented Ocean Side, DTF argued its representation was limited to performing "rudimentary transactional matters including handling closings of sale and rezoning, both of which were done by the transactional side of DTF and not the litigation side." *Id.* DTF further explained the "sale of the land to Oceanside was an arms length transaction by the Lockhart Company ["Lockhart"], which is a separate and distinct entity from DTF."[4] *Id.*; *see also* Def.'s Resp. at 2 ¶ 7 (stating DTF "had represented Ocean Side on closings of certain units at the Raphune Vistas development [and] a rezoning matter on St. Croix"). Nevertheless, while specifically denying the existence of a conflict, DTF offered to implement a "Chinese wall" between its transactional and litigation divisions. Pls.' Mot., Ex. D [DE 102-4].

In plaintiffs' motion, plaintiff contends "DTF admits that it previously represented Ocean Side in the purchase of the land it developed with Cubica." Pls.' Mot. at 5. In response, DTF

---

[2] The parties' briefs and exhibits use "Ocean Side" and "Oceanside" interchangeably.

[3] A conflicts search conducted via DTF's client management system indicates DTF has never represented Cubica. Def.'s Resp. at 2; Defs.' Resp., Ex. 2 [DE 107-2]; Pls.' Mot., Ex. D [DE 102-4] (letter from DTF stating it "has never represented Cubica [] in any capacity at any time"). Plaintiffs do not contest defendant's claim that an attorney-client relationship never existed between DTF and Cubica. In fact, plaintiffs implicitly concede the non-existence of such a relationship as their argument focuses solely on DTF's prior representation of Ocean Side. *See* Pls.' Mot. at 5-7.

[4] In their motion, plaintiffs advise that "[o]ne of the officers of the Lockhart Company is Mr. George Dudley, a named partner at DTF." Pls.' Mot. at 3.

counters that "it did not represent Ocean Side in the negotiations for the land purchase from Lockhart [], but did undertake a limited joint representation of Lockhart [] and Ocean Side in memorializing [a] Forbearance Agreement when Ocean Side failed to make the Note payments to Lockhart [], as agreed." Def.'s Resp. at 2-3 ¶ 8. Defendant included as an exhibit to its response a letter dated March 10, 2010, wherein DTF sought consent from Carlos Cacciamani ("Cacciamani"), an officer of Ocean Side, to concurrently represent Lockhart and Ocean Side regarding the forbearance matter. Def.'s Resp., Ex. 3 [DE 107-3]. In particular, DTF advised Ocean Side of Lockhart's request that DTF assist in resolving the matter concerning Ocean Side's failure to timely pay its note to Lockhart. *Id*. DTF noted its understanding that Ocean Side and Lockhart had "negotiated the terms of an amicable resolution of the matter" and that Lockhart had "requested [DTF's] assistance in documenting the proposed resolution." *Id*. DTF advised of its willingness to provide the requested representation subject to the consent of both Lockhart and Ocean Side in light "of [their] adverse interests." *Id*. Cacciamani, as a "duly authorized officer of" Ocean Side, acknowledged and agreed to DTF's "common representation" of Ocean Side and Lockhart in connection with the forbearance agreement and note.[5] *Id*.

On June 29, 2012, Cubica filed an amended complaint adding Ocean Side as a plaintiff. [DE 84]. Defendant states that since DTF's "Chinese wall" offer, the parties have engaged in extensive discovery pursuant to this Court's February 6, 2012 trial management order ("TMO").

---

[5] In the March 2010 letter, DTF stated it represented the interests of Lockhart only and advised it would "not represent Oceanside . . . in connection with the negotiation of the terms of the Forbearance Agreement, or in other matters directly related to [Lockhart's] efforts to obtain payment on its Note" and that Ocean Side must "obtain separate legal counsel to advise them in connection with these matters." Def.'s Resp., Ex. 3 [DE 107-3]. DTF advised further that it would "continue to represent Oceanside in connection with the upcoming closings on its residential home sales" in its Raphune Vistas development; however, DTF's representation would be "expressly limited to that matter and [DTF] will have no obligation to provide representation to Oceanside [] with respect to any other matters." *Id*. Neither party provided any details regarding the "upcoming closings" referenced in the March 2010 letter and in particular, whether the closings were consummated prior to DTF's representation of MAPFRE.

Def.'s Resp. at 3 ¶ 15. Defendant advises further that DTF has set "a deposition schedule for approximately twenty five (25) deponents over the coming forty-five (45) days to comply with the [C]ourt[']s fact discovery schedule"[6] and "has met with and discussed the facts of this case with numerous experts MAPFRE intends to retain and has been working with these experts regarding retention agreements, the scope of their respective reports and securing C/V's by November 17, 2012 as required by" the Court's TMO. Def.'s Resp. at 3 ¶ 16.

## II. STANDARD FOR A MOTION TO DISQUALIFY COUNSEL

"The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings and the purpose of granting such motions is to eliminate the threat that the litigation will be tainted." *McKenzie Constr. v. St. Croix Storage Corp.*, 961 F. Supp. 857, 859 (D.V.I. 1997). "The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 363 (D.V.I. 2004). "Courts are required to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility." *Gordon v. Bechtel Int'l*, 2001 U.S. Dist. LEXIS 22432, at *15 (D.V.I. Dec. 28, 2001).

Even if a court finds that counsel violated the MRPC, however, "disqualification is never automatic." *See Brice v. Hess Oil Virgin Islands Corp.*, 769 F. Supp. 193, 195 (D.V.I. 1990) (quoting *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). Rather, a district court should grant a motion to disqualify counsel "only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule."

---

[6] Pursuant to the TMO, the deadline for completion of all fact discovery, including depositions, was October 3, 2012. [DE 28].

*Miller*, 624 F.2d at 1201.   In making this determination, a court should balance the following factors: (1) the moving litigant's interest in "the continued loyalty of his attorney;" (2) "the opposing litigant's interest in retaining his chosen counsel;" (3) prejudice to the opposing litigant in terms of "time and expense required to familiarize a new attorney with the matter;" and (4) the "policy that attorneys be free to practice without excessive restrictions."   *Brice*, 769 F. Supp. at 195.

"Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993) (internal quotation marks omitted); *accord Prosser v. Nat'l Rural Utils. Coop. Fin. Corp.*, 2009 U.S. Dist. LEXIS 47744, at *6 (D.V.I. June 8, 2009).   "Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified."   *Alexander*, 822 F. Supp. at 1114 (internal citations omitted).   "Vague and unsupported allegations are not sufficient to meet this standard." *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994); *see also Hamilton v. Dowson Holding Co.*, 2009 U.S. Dist. LEXIS 57715, at *12 (D.V.I. July 2, 2009) (stating "mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard").

### III.   ANALYSIS

Plaintiffs seek to disqualify DTF due to its "intimate knowledge of Ocean Side's corporate and transactional structures" and cite Rules 1.7 and 3.7 of the MRPC as the basis for their motion.   Pls.' Mot. at 3 (emphasis omitted).   Before addressing the applicability of Rules 1.7

and 3.7, however, the Court must first address the issue of whether plaintiffs have waived their right to object to DTF's status as MAPRFE's counsel.

## A. Plaintiffs have waived their right to seek disqualification.

Defendant contends plaintiffs have waived their right to seek disqualification on grounds of undue delay and the "resultant prejudice" that would befall MAPFRE if DTF was disqualified. Def.'s Resp. at 11-12. Courts have held that a party may waive its objection to a conflict of interest by failing to file timely a motion to disqualify. *See Alexander*, 822 F. Supp. at 1115 (stating "[w]aiver is a valid basis for the denial of a motion to disqualify"). In determining whether the moving party has waived its right to object to the opposing party's counsel, the following factors should be considered: "(1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred and (5) whether disqualification would result in prejudice to the non-moving party." *Id.* (citations omitted). "The essence of this analysis is whether the party seeking disqualification appears to use the disqualification motion as a tactical maneuver." *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 229-30 (D.N.J. 2001).

When considering the above-mentioned factors, the Court first observes that plaintiffs learned of the potential conflict of interest no later than January 2012, but filed their motion more than eight months later. *See, e.g., Conley v. Chaffinch*, 431 F. Supp. 2d 494, 499 (D. Del. 2006) (finding movant waived issue where motion filed nine months after learning of potential conflict); *In re Modanlo*, 342 B.R. 230, 237 (D. Md. 2006)(finding movant waived issue where

motion filed five months after learning of potential conflict).[7]   Second, during this period, plaintiffs have been represented by counsel.

As to the third factor, the reason for the delay is not clear.  In February 2012 DTF advised plaintiffs' counsel that DTF had not represented Cubica, but it had represented Ocean Side, a non-party at that time.  Then, Cubica waited until June to amend its complaint to add Ocean Side as a party, and plaintiffs inexplicably waited an additional two months before filing the instant motion.  Plaintiffs offer no explanation as to why the motion was filed so long after Cubica first raised the issue.

Finally, MAPFRE would be prejudiced by the disqualification of DTF.  This case is more than a year old and DTF has invested much time and effort in preparing MAPFRE's defense.  Indeed, fact discovery ended October 3, 2012 and expert witnesses are to be identified on or before November 17, 2012.  [DE 28].

The facts before the Court suggest plaintiffs' motion was delayed for tactical reasons. *See Jackson v. J.C. Penney Co.*, 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981) (stating "[a] litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed").  Under the totality of circumstances present in this case, the Court concludes plaintiffs have waived their objection to DTF's continued representation of MAPFRE.  Moreover, even if the motion was timely, for the reasons provided below, plaintiffs have failed to meet their burden of proving a conflict exists that warrants disqualification.

---

[7] Other cases in which courts found a waiver of the conflict issue involved delays significantly longer than the delay in the present case.  *See, e.g., Alexander, 822 F.Supp*.at 1114 (delay of three years*); Jackson v. J.C. Penney Co*., 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981) (delay of fifteen months).  However, the length of delay is just one factor a court considers.

**B.      Even if plaintiff's motion had been timely filed, no conflict exists.**

1.      MRPC 1.7

Rule 1.7 governs conflicts of interest among or between **current** clients.  However, in their motion, plaintiffs argue "DTF is unable to protect the interests of both MAPFRE and its **previous client**, [Ocean Side]."  Pls.' Mot. at 8 (emphasis added); *see also id*. at 5 (stating DTF should be disqualified since it "previously represented" Ocean Side).  Accordingly, plaintiffs are not entitled to disqualification based upon Rule 1.7.

2.      MRPC 3.7

Plaintiffs provide no analysis regarding the applicability of Rule 3.7 to the instant matter, and its application is not apparent to the Court.  Rule 3.7 defines the parameters for a lawyer who is a necessary witness at a trial;[8] yet, nowhere in plaintiffs' motion have they identified a specific attorney that any party might call as a witness.  The Court notes further that Rule 3.7 refers to representation at trial, not during preliminary stages of the litigation; accordingly its application at this stage would be premature.  *See Prosser v. Nat'l Rural Utils. Coop. Fin. Corp.*, 2009 U.S. Dist. LEXIS 37990, at *11 (D.V.I. May 1, 2009) (noting Rule 3.7 "is only applicable to trial and the attorney may continue to represent the client up to trial").  Consequently, plaintiffs are not entitled to disqualification based upon Rule 3.7.

---

[8] Rule 3.7 provides:

 (a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

   (1) the testimony relates to an uncontested issue;

   (2) the testimony relates to the nature and value of legal services rendered in the case; or

   (3) disqualification of the lawyer would work substantial hardship on the client.

(b)  A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

3.  MRPC 1.9(a)

Upon review of the parties' materials, it is evident the rule relevant to the instant matter is Rule 1.9, which addresses conflicts of interest stemming from representation of former clients and provides in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a **substantially related matter** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MRPC 1.9(a) (emphasis added); *see Javorski v. Nationwide Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 81490, at *17 (M.D. Pa. Nov. 6, 2006) (explaining "[t]he purposes of Rule 1.9 are to prevent even the potential that a former client's confidences may be used against him, to maintain public confidence in the integrity of the bar, and to fulfill a client's rightful expectation of the loyalty of his attorney in the matter for which he is attained [sic]") (citing *In re Corn Derivatives*, 748 F.2d 157, 162 (3d Cir. 1984)). Accordingly, disqualification under Rule 1.9(a) requires the existence of four factors: (1) an attorney-client relationship existed between the attorney and the former client; (2) the former representation was with respect to the same or a substantially related matter as the present matter; (3) the interests of counsel's current client are materially adverse to the interests of the former client; and (4) the former client has not consented. *See Apeldyn Corp. v. Samsung Electronics, Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009); *see also Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 672 (E.D. Pa. 2004).

Here, requirements one, three and four of Rule 1.9 are met. Ocean Side is a former client of DTF, and in this instance, Ocean Side is suing DTF's present client, MAPFRE. *See Jordan*, 337 F. Supp. 2d at 672 (stating "[t]here is no situation more 'materially adverse' than when a

*Cubica Group, LLLP and Ocean Side Village, Inc., v. MAPFRE, et al.*
Case No. 3:11-CV-108
Page 11

lawyer's former client is in a suit against that lawyer's current client"). Also, Ocean Side has not consented to DTF's representation of MAPFRE.[9]

The Court now turns to the issue of whether the subject of DTF's former representation of Ocean Side is the same or substantially related to the present matter. The prior and current representations are obviously not "the same." DTF's prior representation of Ocean Side involved transactional real estate matters, while the instant matter concerns the applicability of an insurance contract to a claim for windstorm damage and the alleged breach thereof.

As for the "substantially related" inquiry, "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MRPC 1.9, Comment 3. Accordingly, the following factors guide this Court's determination as to whether the matters are substantially related: (1) the nature and scope of DTF's former representation of Ocean Side; (2) the nature and scope of the present lawsuit; and (3) the possibility that Ocean Side "might have disclosed confidences during the earlier representation which could be relevant and detrimental to the present action." *VECC, Inc.*, 222 F. Supp. 2d at 720 (citation omitted).

a.      *Nature and Scope of the Prior Representation*

To assess the nature and scope of the prior representation, "the court should focus upon the reasons for the retention of counsel and the tasks which the attorney was employed to perform." *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992). According to plaintiffs, Ocean Side retained DTF "in the acquisition of the land, zoning

---

[9] Plaintiffs provide no evidence that an attorney-client relationship existed between DTF and Cubica. While plaintiffs' motion focuses on DTF's prior representation of Ocean Side, to the extent plaintiffs also move to disqualify DTF based on its alleged representation of Cubica, plaintiffs' motion is DENIED.

matters and individual unit sales at the affordable housing community." Pls.' Mot. at 2 (citing Ex. C, Aff. Juan Carlos Cacciamani[10] [DE 102-3]); *see also* Def.'s Resp., Ex 1 [DE 107-1] (letter from plaintiffs' counsel stating DTF "acted as the closing agents for the Raphune Vistas project," "was involved in the rezoning of the property where the claim in this lawsuit is set;" and was involved in "the rezoning of other lands owned by companies related to Cubica").

Defendant does not expressly deny its alleged role as a "closing agent" for the Raphune Vistas project as claimed by plaintiffs. Rather, DTF counters that it did not represent Ocean Side in the negotiations for the purchase of the Raphune Vista property from Lockhart. Def.'s Resp. at 2 ¶ 8; *see also* Def.'s Resp., Ex. 3 [DE 107-3] (letter to Cacciamani advising that DTF has represented and continues to represent Lockhart in numerous matters, "including the sale" of the Raphune Vistas property to Ocean Side).

Regardless of whether DTF served as the "closing agent" for the subject property, as alleged by plaintiffs, the fact remains that the nature of DTF's representation was purely transactional and involved no litigation. Moreover, the scope of the representation involved typical real property-related tasks, including rezoning issues, closings and memorializing a forbearance agreement – actions unrelated to the factual issues raised in the present litigation. There simply is nothing in the record to suggest DTF represented Ocean Side in the procurement of the MAPFRE insurance policy or assisted Ocean Side regarding any issue related to the policy or hurricane damage claims.

---

[10] Plaintiffs' motion is based solely on arguments of counsel, as they offer no evidence in support of their motion. The Cacciamani affidavit upon which plaintiffs rely does not support any of the facts alleged in plaintiffs' motion that bear on the disqualification issue. In fact, the Cacciamani affidavit is limited to details concerning the procurement of the MAPFRE insurance policy, the coverage provided thereby and the denial of Cubica's claim. The affidavit provides no information regarding DTF's former representation of Ocean Side despite plaintiffs' citations throughout its motion to the contrary.

b.      *The Nature and Scope of the Present Matter*

In assessing the nature and scope of the present matter, "the court should evaluate the issues raised in the present litigation and the underlying facts." *Graphix Hot Line, Inc.*, 808 F. Supp. at 1204. Cubica commenced this action against MAPFRE following MAPFRE's denial of Cubica's claim for damages to "buildings under construction and not yet turned over to" Ocean Side. Pls.' Mot. at 2; Def.'s Resp. at 8. Thus, this case centers on the amount of damages sustained to the buildings under construction as a result of Hurricane Earl, and whether Cubica's claim for property damages falls under the terms of its insurance policy with MAPFRE.

The only factual overlap between DTF's prior representation and its current representation is that both representations involved the Raphune Vista project. There is no evidence that DTF ever represented Ocean Side in any manner regarding the insurance policy or the claims at issue. DTF was not involved in procuring the MAPFRE insurance policy and never advised Ocean Side on any matters involving the policy. Def.'s Resp. at 9.

c.      *Disclosure of Confidences*

Finally, the Court must determine whether Ocean Side "might have" disclosed confidences to DTF that could be "relevant and detrimental" to Ocean Side in the instant matter. *VECC, Inc.*, 222 F. Supp. 2d at 721. In making this determination, "a court need not delve into the exact nature of confidences revealed if it is merely possible, given the nature and scope of the current and former representation, that such confidences were revealed." *Id.* Despite the fact that DTF is now acting in an adverse capacity to its former client, plaintiffs have not put forth any evidence to support even a "mere possibility" that Ocean Side disclosed to DTF confidences which could be detrimental to Ocean Side in the present litigation. The exhibits provided by the parties indicate DTF provided legal advice to Ocean Side limited to transactional issues,

including property closings, zonings and a forbearance agreement, none of which are at issue here. The prior and current representations did not arise out of the same underlying incident. Moreover, the matters involve dissimilar legal issues.

Nevertheless, plaintiffs contend Cacciamani consulted with DTF attorney Bill McConnell on an unspecified date "to discuss MAPFRE's denial of Cubica's claim and how the denial impacted Ocean Side's current and projected sales of the units at the project." Pls.' Mot. at 3. Thus, according to Plaintiffs, DTF has "intimate knowledge of Ocean Side's business venture with Cubica in matters related to the construction, completion and sale of the affordable housing units, as well as Cubica's claim with MAPFRE and the impact that MAPFRE's claim decision had on the projected construction and unit sales of the project which are damages claimed by Cubica." *Id*. Plaintiffs argue further Cacciamani discussed with Kristen McConnell,[11] Bill McConnell's wife and Ocean Side's sales broker, Cubica's claim denial and the impact it would have on the unit sales. *Id*. In sum, plaintiffs argue that Ocean Side "shared details with DTF of the nature and extent of the financial impact that MAPFRE's claim denial had on Cubica['s] and Ocean Side's budgets, project completion dates and projected sales." *Id*. at 7.

Assuming *arguendo* that the Cacciamani affidavit supports plaintiffs' position, which by its plain language it does not, it is unclear to the Court how information allegedly shared is "relevant and detrimental" to plaintiffs' breach of contract action. As explained by defendants, Ocean Side has sought

> damages for business losses it claim[s] to have suffered as a result of the claims being adjusted with no recovery to Cubica and Ocean Side. As such, all information regarding [Ocean Side's] unit sales, profit margins, costs and the relationship between Cubica and Ocean Side are discoverable since they have

---

[11] Defendant indicates the proper spelling of Ms. McConnell's first name is "Kerstin." Def.'s Resp. at 10.

made them an integral issue in the litigation by making a claim for damages for lost profits.

Def.'s Resp. at 10.

Moreover, as defendant correctly notes, as a result of plaintiffs' disclosure of the allegedly confidential information to Ms. McConnell – a non-attorney – regarding the impact of MAPFRE's denial of Cubica's insurance claim on Ocean Side's "projected construction and unit sales of the project" and its "business decisions," plaintiffs have waived any attorney-client privilege regarding such information. Def.'s Resp. at 10 (citing *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1427 (3d Cir. 1991) (stating "under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else").

Plaintiffs have come forward with nothing more than unsupported allegations of a potential conflict arising from former representation. Having found that the matters in which DTF previously provided legal advice to Ocean Side are not the same or substantially related to the present matter, and considering that disqualification is a harsh measure and generally disfavored, the Court concludes that plaintiffs have failed to meet their burden in demonstrating that disqualification is required pursuant to Rule 1.9 of the MRPC.

## IV. CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that plaintiffs' motion to disqualify counsel [DE 102] is DENIED.

**Dated:** October 29, 2012           S\_____
                                       **RUTH MILLER**
                                       United States Magistrate Judge